IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND
**Civil Division**

| | |
|---|---|
| **AMBER M. CANTER** * <br>     c/o Murphy, Falcon & Murphy, P.A. <br>     1 South Street, 30th Floor * <br>     Baltimore, Maryland 21202 <br>          * <br>     *Plaintiff,* <br>          * <br> v. <br>          * | Case No.: 24-C-22-002645 |

**AMBER M. CANTER**
    c/o Murphy, Falcon & Murphy, P.A.
    1 South Street, 30th Floor
    Baltimore, Maryland 21202

    *Plaintiff,*

v.

**STATE OF MARYLAND**
    Serve: Nancy Kopp
            Treasurer's Office
            Goldstein Treasury Building
            80 Calvert Street
            Annapolis, Maryland 21401

and,

**SECRETARY ROBERT L. GREEN**
    In His Individual and Official Capacity
    As Secretary of Maryland Department of
    Public Safety and Correctional Services
    6776 Reisterstown Road
    Baltimore, Maryland 21215

and,

**WARDEN FREDERICK T. ABELLO**
    In His Individual and Official Capacity
    as Warden of Baltimore City
    Central Booking & Intake Center
    300 East Madison Street
    Baltimore, Maryland 21202

    *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>FIRST AMENDED COMPLAINT & JURY DEMAND</u>

Comes now, Plaintiff Amber Canter, by and through undersigned counsel, and states as

follows:

Exhibit B

## INTRODUCTION






*Figure 1 - Plaintiff Canter prior to June 14, 2019 officer brutality.*

*Figure 2 - Plaintiff Canter immediately after suffering an unlawful assault by Officer Zanel Santana on June 14, 2019.*

1.     This case arises from the unlawful, unconstitutional, and brutal attack on Plaintiff Amber Canter ("Amber"), a pretrial detainee transgender woman, which was committed under the watch of the State of Maryland Department of Public Safety and Correctional Services ("DPSCS") by correctional officer Zanel Santana at Baltimore City Central Booking & Intake Facility.

2.     This case also arises from the negligent conduct, omissions, discrimination, and/or deliberate indifference of Defendants State of Maryland ("State"), Robert L. Green ("Defendant Green"), and Frederick T. Abello ("Defendant Abello"), that violated Amber's rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Maryland Declaration of Rights, and was the proximate cause of the damages sustained by Amber.

2

3.      On June 14, 2019, Officer Santana choked Amber until she was rendered unconscious, whereby he dropped her limp body from his waist-level onto the concrete detention center floor face-first. Officer Santana and Officer Okeke then dragged Amber's lifeless body across a common area and into her cell. The Officers initially failed to provide Amber with immediate medical care.

4.      As a result of this brutality, Amber sustained a fractured left orbital bone, a fracture to her left optic nerve canal, fractures to her left anterior skull base, multiple sinus fractures, severe bruising to her left forehead, pneumocephalus (air pockets in the intracranial space created by blunt force trauma), and internal bleeding behind her left eye. Moreover, Amber suffers significant mental health issues because of this traumatic encounter. Further, these unlawful acts exacerbated her already existing conditions of gender dysphoria, anxiety, depression, bi-polar disorder, and post-traumatic stress disorder.

5.      Amber subsequently attempted to report the unconstitutional and unlawful actions of the correctional officers to officials at Central Booking and requested reasonable accommodations to mitigate the effect of these actions on her symptoms and conditions related to her gender dysphoria, including but not limited to Defendant Abello. The officials refused to effectively process Amber's complaints, refused to address her concerns, and refused to provide her with the reasonable accommodations, violating her federally protected rights as an inmate, and leaving her vulnerable to this very day to future harassment and abuse by correctional officers throughout the DPSCS system.

6.      Amber was and continues to be subjected to a continuous pattern of discrimination, abuse, and harassment by DPSCS correctional officers in retaliation for her complaint up until present day.

3

7.——As a result of the brutal attack, and the continuous discrimination, abuse, and harassment she has and continues to suffer since the attack to the present day, Amber suffered and continues to suffer from severe physical pain and suffering and significant emotional pain and suffering, including but not limited to fear for loss of life, loss of sleep, anxiety, depression, and post-traumatic stress disorder.

4

## JURISDICTION & VENUE

8.      Jurisdiction is proper in this Honorable Court under Maryland Annotated Code Courts & Judicial Proceedings Section 6-102 and 6-103 because this is a civil action arising from actions that caused tortious injury and that occurred in the State of Maryland committed by persons or entities that are domiciled in the State of Maryland or are organized under the laws of the State of Maryland.

9.      Venue is proper in this Honorable Court under Maryland Annotated Code Courts & Judicial Proceedings Section 6-201. Plaintiff timely filed proper notice under the Maryland Tort Claims Act and is in full compliance with Maryland Annotated Code State Government Article § 12-101 through 12-110. Plaintiff has exhausted all administrative remedies available to her to resolve her complaint pursuant to the Prison Litigation Reform Act.

## PARTIES

10.    Plaintiff Amber Canter ("Amber") is and was at all times relevant to the occurrence complained of herein, an adult citizen of the United States and a resident of Baltimore City, Maryland.  At the time of the occurrence complained of herein, Amber was a ~~pretrial~~ detainee and/or was committed to the custody of the State of Maryland's Department of Public Safety and Correctional Services ~~awaiting trial in the Baltimore City Circuit Court~~.

11.    Amber is a transgender woman, an individual whose gender identity (female) is different from the gender (male) assigned to her at birth.

12.    Amber has completed a legal name change to her current name and a legal change in her gender markers in her resident state of Maryland. In all ways, the law recognizes Amber as a woman.

5

10.13. As an individual whose gender identity is female, Amber identifies as a woman, expresses her gender identity as a woman, and lives full-time as a woman.

11.14. Defendant State of Maryland ("Defendant State") is a body politic and corporate body that receives federal funds and may sue and be sued and has waived any applicable sovereign immunity in accordance with the Maryland Tort Claims Act under the State Government Article of the Maryland Code, 12-104.—. Defendant State conferred upon Defendant Green, and each of his predecessors, by authority of state law, the duty to operate DPSCS and Baltimore City Central Booking and Intake Center, located at 300 East Madison Street, Baltimore, Maryland 21202 ("Central Booking") at all times relevant to this Complaint. At all times relevant to this Complaint, Defendant State had a special relationship with, was responsible for, and had the duty to provide adequate care, safekeeping, and protection to all pretrial detainees under the supervision of DPSCS.

12.15. Defendant, Robert L. Green is an adult citizen of the United States and at all times relevant to the occurrence complained of herein served and currently serves as an agent, servant, and or employee of the State of Maryland, and was acting within the scope of his employment as the Secretary of Public Safety and Correctional Services. As Secretary, Defendant Green was and is entrusted, under authority of state law, with dispensing a budget of more than $1 billion throughout the DPSCS system.—. Defendant Green was and is charged by the State of Maryland with the duty to protect the safety and constitutional rights of pretrial detainees by establishing, maintaining, and monitoring security policies and procedures that shall provide for the health, safety, welfare, of pretrial detainees under the supervision of DPSCS. Defendant Green was and is charged by the State to establish, maintain, and oversee the effective promulgation of the DPSCS Standards of Conduct & Internal Administrative Disciplinary Process.—. Defendant Green was and

6

is also charged by the State to establish, maintain, and oversee the effective promulgation of the minimum qualifications and training requirements of employees of DPSCS as Chairperson of the Maryland Correctional Training Commission. Defendant Green stands in the shoes of all his predecessors for the purposes of this case, whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law. Defendant Green had and continues to have the capacity and authority to hire, fire, and supervise final policymakers of the Maryland Department of Public Safety and Correctional Services, including all individually named defendants herein.

13. 16. Defendant Frederick T. Abello is an adult citizen of the United States and at all times relevant hereto served as an agent, servant, and or employee of the State of Maryland, and was acting within the scope of his employment as the Warden for Central Booking and whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law. Specifically, Defendant Abello was and continues to be responsible for the overall operations of Central Booking and is solely and directly charged with the duty of effectively implementing, maintaining, and overseeing the promulgation of the DPSCS Standards of Conduct & Internal Administrative Disciplinary Process within Central Booking as well as protecting pretrial detainees from foreseeably unreasonable harm within Central Booking. Defendant Abello had and continues to have the capacity and authority to hire, fire, and supervise final policymakers of Central Booking, including all individually named defendants herein, save Defendant Green.

7

~~14.~~17. The Baltimore City Central Booking and Intake Facility "BCBIF" is a state facility organized and operated as part of the Division of Pretrial Detention and Services, which is part of the Maryland Department of Public Safety and Correctional Services.

~~15.~~18. All Defendants are jointly and severally liable for damages and injuries to Plaintiff described herein.

### FACTS COMMON TO ALL COUNTS

~~16.~~19. On February 24, 2019, Amber was arrested in Baltimore City and detained in the care and custody of DPSCS and Defendant State at Central Booking pending a criminal trial in the Baltimore City Courts.~~.~~

20.     Prior to her term of incarceration, Amber ~~was~~ had been officially diagnosed with gender dysphoria, a mental health disorder suffered by many (but certainly not all) transgender people.

21.     Gender dysphoria ~~which~~ involves clinically significant and debilitating psychological distress that results from an incongruence between one's sex assigned at birth and one's gender identity. In Amber's case, the distress caused by her gender dysphoria results in intense anxiety and depression.

22.     If left untreated, gender dysphoria can cause, among other things, depression, substance abuse, self-mutilation, other self-harm, and suicide. Failure to follow an appropriate treatment plan for gender dysphoria can expose transgender individuals to a serious risk of psychological and physical harm.

23.     Gender dysphoria is **not** a gender identity disorder.

24.     The stigma attached to gender-nonconformity often leads to prejudice and discrimination against transgender people. These acts of prejudice and discrimination are

8

medically referred to as "minority stress." When people who are diagnosed with gender dysphoria experience minority stress, it may exacerbate the symptoms and conditions associated with their gender dysphoria diagnosis.[1]

25.    Gender dysphoria can in large part be alleviated through "gender affirming" care and treatment, including hormone therapy.

17.26. This officialAmber's gender dysphoria diagnosis was supported by the fact that Amber she attempted self-castration due to the dissonance she was experiencing between her gender identity and her gender assigned at birth,. Amber's failed attempt to castrate herself causeding her significant physical pain and further physical ailments, including but not limited to the formation of a large painful cyst on her genitals.

27.    During her term of pretrial detention, Amber became notoriously known by Central Booking correctional officers, staff, and administrators, including Defendants Green and Abello, as a persistent advocate and activist for transgender inmate rights. Amber constantly challenged the policies and practices of the facility that she determined to be detrimental to the transgender inmate community.

18.28. During her term of pretrial detention, Amber also sought reasonable accommodations for her gender dysphoria condition from Defendants, including but not limited to access to hormone therapy, access to feminine products such as undergarments, and repeated requests for Defendants to implement and enforce policies prohibiting DPSCS staff members from misgendering her, discriminating against her based on her transgender status, and/or harassing her due to her transgender status.

---

[1] The World Professional Association for Transgender Health Statement Concerning Cross-dressing, Gender-Nonconformity, and Gender Dysphoria, July 15, 2014.

19.29.  DDespite her requests for these reasonable accommodations related to her gender dysphoria condition, during her term of pretrial detention, Amber was denied these accommodations and faced constant ridicule, disrespect, and animus from correctional officers at BCBIF and throughout the DPSCS system about her transgender status. Specifically, Amber was called derogatory and transphobic names and slurs, was discriminated against due to her gender and her disability, was misgendered, and was denied other reasonable accommodations for her gender dysphoria.

20.30.  Upon information and belief, prior to June 14, 2019, Defendants Green and Abello were aware of Amber's reputation as a transgender activist and were aware that their correctional staff treated her improperly and adversely discriminated against her due to her transgender status and activism, despite their knowledge of her gender dysphoria diagnosis.

21.31.  Prior to her attack, Amber had provided intelligence to Defendant Abello regarding observations that she had made of Officer Santana, specifically that Officer Santana had apparently smuggled illegal drugs into BCBIF and distributed them to certain inmates believed to be members of a street gang.

22.32.  Upon information and belief, prior to June 14, 2019, it was known to Defendant Abello that Officer Santana had discovered that Amber had relayed this incriminating information regarding Officer Santana to Defendant Abello.

23.33.  On June 14, 2019, Amber was instructed by Central Booking staff that she was being transferred from Central Booking to Maryland Regional Diagnostic & Classification Center ("MRDCC") a DPSCS prisoner post-trial intake facility located at 500 East Madison Street, Baltimore, Maryland 21202.

10

24.34. Before DPSCS attempted to effect Amber's transfer, Amber spoke to Sergeant Jakmee Mobley who informed her that if she did not end up ultimately being transferred that Amber would be entitled to receive "out-of-cell" recreational time before being locked back into her cell for that evening.

25.35. Sergeant Mobley then relayed the instructions to permit Amber to have recreational time if she was not transferred to Officer Glaudia Vincent. In response, Officer Vincent stated, in Amber's presence, that Amber would not be receiving recreation time, and that she, "[did not] give a fuck, this [faggot] will not get nothing extra!"

26.36. Central Booking staff then attempted to transfer Amber to MRDCC. However, Amber was rejected at the detainee entrance of MRDCC by the Warden of the facility. Amber was then transported back to Central Booking, much to the chagrin of several Central Booking officers and staff members, including Officer Santana, who believed they were finally rid of her.

27.37. Upon returning to Central Booking, Amber observed that the other detainees were having recreational time. Amber asked Officer Okeke if she could join the recreational session as she had been instructed by Sergeant Mobley.

28.38. In response to Amber's request, Officer Vincent interjected stated, "I'm sick of your faggot ass getting special privileges. Just like I told Mobley, you're not getting no fucking rec[reational time]."

29.39. Officer Vincent then attempted to lock Amber into her cell for the evening, but Amber refused and insisted that she receive Sergeant Mobley's promise of recreational time prior to lockdown.

30.40. Officer Vincent then called for Officer Santana to respond from a completely different tier of the detention center to "assist" her in the dispute with Amber.

11

31.41.  As Amber protested Officer Vincent's attempt to lock her into her cell for the night, Amber asked Officer Washington to call Sergeant Mobley and/or Defendant Abello to come and address the issue in real-time.  Neither supervisor responded.

32.42.  Amber then went into a nearby sally port, sat on the floor in the middle of the room in protest, and stated to Officer Washington that she was not moving and again requested that a supervisor respond to the situation.

33.43.  Officer Washington refused Amber's request to have a supervisor respond to resolve the dispute.

34.44.  Officer Santana arrived on scene and stood behind Amber and shouted to Officer Washington, "Mace this fucking dick sucker!"

35.45.  Officer Santana then put on his tactical gloves and acted as if he was going to strike Amber.  Officer Santana also began pushing Amber in her back with his knee as she sat on the floor.

36.46.  Coincidentally, Ms. Susan Cozzolino, Coordinator of the Emergency Mental Health and Psychology Department of DPSCS was present in Central Booking outside of the sally port as this encounter unfolded.

37.47.  When Officer Santana saw Ms. Cozzolino observing his actions, instead of asking for her expert help in deescalating the situation, he shouted at her, "What the fuck you looking at? Mind your own business!"

38.48.  Ms. Cozzolino shook her head, waved her notebook at Officer Santana, and quickly left the scene.

39.49.  Officer Santana then bent down over Amber as she was still seated on the floor and wrapped his right arm around Amber's neck tightly in a chokehold.  Officer Santana

12

simultaneously took his left arm and clamped his right arm even more tightly around Amber's neck~. Officer Santana then lifted Amber off the ground while continuing to unlawfully choke her, and he began to push/carry her out of the sally port and into a common area~.

40.50. Officer Okeke grabbed Amber by her right arm and assisted Officer Santana with removing her from the sally port~.

41.51. Officer Santana choked Amber until she was rendered unconscious within a matter of seconds.

42.52. Officer Santana continued to choke Amber while carrying her limp body across the common room floor for several more feet.

43.53. Officer Okeke attempted to help Officer Santana drag Amber across the room by providing support on Amber's right side~.

44.54. Officer Washington walked along Amber's left side and simply watched this unreasonable assault, but she made no attempt to intervene on Amber's behalf.

45.55. Suddenly, and without any lawful or justifiable purpose, Officer Santana dropped Amber's lifeless body~. Amber's head fell from Officer Santana's waist-level down to the concrete floor directly onto her face.

46.56. Officers Santana and Okeke then grabbed Amber by her arms and her jumpsuit and dragged her across the rest of the common room floor and left her on the floor of her cell.

47.57. None of the Officers sought any medical treatment for Amber for more than ten minutes following Officer Santana dropping her onto her face, even though Amber had just been rendered unconscious from Officer Santana's chokehold and had sustained a serious open head wound that was visibly bruised and swollen.

13

48. 58. Instead, the Officers kept Amber in her cell for approximately ten minutes following her assault, and she luckily regained consciousness during this timeframe.

49. 59. Officer Washington then transported Amber to the Central Booking medical unit so that Amber could receive treatment for her injuries.

50. 60. At the Central Booking medical unit, the medical providers determined that Amber's injuries were very serious, and they transferred her to the Intensive Care Unit at Johns Hopkins Hospital.

51. 61. At Johns Hopkins, Amber was diagnosed with a fractured left orbital bone, a fracture to her left optic nerve canal, fractures to her left anterior skull base, multiple sinus fractures, severe bruising to her left forehead, pneumocephalus (air pockets in the intracranial space created by blunt force trauma), and internal bleeding behind her left eye. *See* Fig. 2.

52. 62. Amber remained at Johns Hopkins for approximately four days to stabilize her injuries.

53. 63. During her stay at Johns Hopkins, Amber complained about the assault she suffered from Officer Santana to a hospital staff social worker. Upon information and belief, the social worker called Defendant Abello to advise of the complaint, but he insisted that Amber had not been assaulted.

54. 64. Amber was released from Johns Hopkins with strict instructions to return to see an ear, nose & throat specialist as well as to see a neurologist to determine if she may have needed surgery due to her injuries.

55. 65. However, once back at Central Booking, the staff refused to allow Amber to attend all her medical appointments in retaliation for her complaints of being assaulted.

14

56.66. Upon returning to Central Booking, Amber found Sergeant Mobley sitting in the Investigative Unit office of the facility. When Sergeant Mobley saw Amber, he stated, "I see your faggot ass got what was coming to you!"

57.67. To add further insult to her injuries, on June 17, 2019, Amber was issued a Notice of Infraction by Central Booking administrators because of her encounter with Officers Vincent, Washington, Okeke, and Santana. Amber was cited for 1) disobeying an order, 2) being disrespectful, 3) engaging in a disruptive act, 4) and making threats.

58.68. Faced with these administrative charges, Amber accepted a plea agreement offered by Central Booking Administration to plead guilty to disobeying an order and being disrespectful in exchange for the promise of a lenient punishment and dismissal of the two additional infractions. Amber was sanctioned with fifteen days of segregation as a punishment for her alleged infractions.

59.69. Unbeknownst to Amber, after her assault, Officers Santana, Washington, and Okeke conspired together to falsify their use-of-force reports that memorialized their encounter with Amber to provide a cover-up for one-another of their unlawful and/or criminal conduct throughout any potential investigation, in direct violation of DPSCS policy.

60.70. Officer Santana lied in his use of force report when he wrote that he "grabbed Inmate Canter by her upper torso" and that "Inmate Canter then dropped her legs and fell by throwing her body to the floor."

61.71. Officer Washington lied in her use of force report regarding this incident when she wrote that CO Santana "placed Inmate Canter in an upper chest hold" as opposed to a choke hold, that the officers "tried to escort Inmate Canter to her cell by her arms", and further asserted that Inmate Canter injured herself by "dropping to the floor".

15

62.72. Officer Okeke also lied in his report when he wrote that Amber "dropped to the floor on purpose," and he completely omitted any mention of the force used by Officer Santana.

63.73. Amber subsequently attempted to report the unconstitutional and unlawful actions of the Officers to officials at Central Booking, including Defendant Abello.

64.74. Defendants Green and Abello failed to effectively process her complaints in so much that they did not adhere to departmental policy, and they refused to address her concerns requests for reasonable accommodations related to her assault and any potential retaliation from DPSCS correctional officers for her complaint.

65.75. As a result, Defendants Green and Abello's inaction has rendered Amber vulnerable to this very day to discrimination, harassment, and abuse by other correctional officers throughout the DPSCS system.

66.76. In fact, Amber has suffered, and continues to suffer consistent discrimination and retaliation from various DPSCS officers in the form of threats to her safety, refusing to receive any further grievances from Amber, arbitrarily limiting the amount of grievances Amber may file, adverse housing transfers, denial and/or delay of medical services and care related to her gender dysphoria, denial and/or delay of housing adjustment needs, denial of requests for employment through the DPSCS workforce program, and/or encouraging/facilitating other inmates to intimidate Amber, in retaliation for lodging her complaint related to her being victimized by Officer Santana.

67.77. Further, Defendants Green and Abello failed, with reckless and deliberate indifference to Amber's rights to be free from cruel and unusual punishment and to due process, to ensure that Central Booking and its correctional officers were properly monitored and/or

16

supervised in their uses of force against inmates and their adherence to departmental policy on authoring use of force reports.

68.78. Defendants Green and Abello failed to establish facility-wide policies necessary to prevent violations of Amber's rights under the United States Constitution, the Americans with Disabilities Acts, Section 504 of the Rehabilitation Act, and the Maryland Declaration of Rights.

69.79. Defendants Green and Abello's failure to use due care to adequately and properly train and supervise its correctional officers, including Officers Santana, Washington, and Okeke, was a direct and proximate cause of Amber's injuries.

70.80. Moreover, Defendants State, Green, and Abello failed, with deliberate indifference, to reasonably protect Amber from foreseeable and known harm.

71.81. As a result of Defendants collective actions and/or inaction or omission, Amber suffered and continues to experience severe physical and emotional pain and suffering, including but not limited to fear for her life, loss of sleep, anxiety, depression, and post-traumatic stress disorder.

72.82. On July 3, 2019, Sergeant Carolyn Murray initiated an Internal Investigation into Amber's complaint of excessive force against the Officer Defendants.—.

73.83. On October 18, 2019, Sergeant Mobley finally turned over a copy of the surveillance footage captured of Officer Santana's assault on Amber to the internal investigator.—. This footage was in the possession of Defendants from June 14, 20192019, until it was turned over.—.

74.84. The surveillance footage confirms that the Officers falsified the events they swore under penalty of perjury that they observed in their use of force reports.

17

75.85. On March 29, 2021, the Officer Santana was criminally indicted by a Baltimore City Grand Jury for his conduct on June 14, 2019. Officer Santana was charged with felony First Degree Assault, and two counts of Misconduct in Office.

86. On March 22, 2022, Officer Santana was convicted by the Baltimore City Circuit Court of 2nd Degree Assault and Misconduct in Office. For his crimes against Amber, he has been sentenced to 90 days of active incarceration.

76.87. Amber has remained in the custody of the State of Maryland Department of Public Safety and Correctional Services to the present day. To date, Defendant State of Maryland continues to deny her the reasonable accommodations and services she has requested to mitigate the symptoms and conditions of her gender dysphoria and the retaliatory discrimination she faces from DPSCS correctional officers and administrators related to her transgender status.

## CLAIMS FOR RELIEF

### COUNT 1

### Violation of Article 24 of the Maryland Declaration of Rights

77.88. Amber adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

78.89. At no time relevant to this action did Amber engage in any criminal or illegal act.

79.90. At no time was Amber a threat to the safety of any corrections officers, herself, or others.

80.91. At no time did Amber resist a lawful detention or attempt to evade detention by flight or otherwise.

18

81.92. At the time of the complained of events, Amber had a clearly established right under the Maryland Declaration of Rights to be secure in her person from excessive force and to bodily integrity.

82.93. Any objectively reasonable corrections officer would have known of these rights at the time of the complained of conduct.

83.94. Officers Santana, Okeke, and Washington engaged in activity that violated Amber's right to Due process as protected under the Maryland Declaration of Rights.

84.95. By the actions detailed herein, including, but not limited to: facilitating the attack against Amber, failing to take reasonable actions to prevent the attack against Amber, facilitating the attempted covering up of the attack against Amber, failing to investigate Amber's attack or take measures to protect her from retaliation, and failing to render aid to Amber immediately and throughout her recovery despite the means and the knowledge to do so, Defendants deprived Amber of her Constitutional rights under the Fourteenth Amendment, in addition to her right against excessive force, including but not limited to:

      a.  Freedom from imprisonment and seizure of freehold, liberty, and privilege without due process and without judgement of her peers;

      b.  Freedom from the deprivation of liberty without due process of the law, and without the judgement of her peers;

      c.  Freedom from the abuse of power by law enforcement and correctional officers;,.' and;

      d.  Freedom from summary punishment at the hands of the State.

85.96. Officers Santana, Washington, and Okeke's actions were objectively unreasonable considering the facts and circumstances then confronting them.

86.97. The force used by Officer Santana, and conspired to by Officers Washington and Okeke, caused her serious bodily injury.

87.98. None of the Defendants took any reasonable steps to protect Amber from the foreseeable and excessive force of Officer Santana. In fact, Defendants failed to act with willful indifference to Amber's rights, despite their conscious awareness that Amber would likely be caused severe physical and emotional injuries.

88.99. At all times relevant hereto, Defendants were acting pursuant to DPSCS custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Amber.

89.100.     Pursuant to the Maryland Torts Claim Act - Maryland Code Annotated State Government Article Section 12-104, Defendant State is directly liable for the constitutional torts committed against Amber by its employees, including Officers Santana, Washington, Okeke, Green, and Abello, because it has legislatively waived its immunity to such claims for tortious acts committed within the scope of their employees' public duties.

90.101.     As a direct and proximate result of the aforesaid conduct, actions, and inactions of all Defendants and that stated elsewhere herein, Amber was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, and inability to perform and enjoy her normal and usual activities, and economic damages, including but not limited to past and future medical bills and expenses, future lost earning capacity and unnecessary attorneys' fees, all to Amber's great detriment.

20

WHEREFORE, Plaintiff respectfully demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees.

## COUNT II

~~Maryland Declaration of Rights Articles 16 and 26 – Cruel and Unusual Punishment~~

~~91.     Amber adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.~~

~~92.     Officer Santana, without legal justification or excuse, placed Amber in a chokehold, rendering her unconscious.  Officer Santana then dragged Amber across a common room and intentionally dropped her face first onto a concrete floor.~~

~~93.     Officers Washington & Okeke conspired with Officer Santana when they chose not to intervene after observing Officer Santana start to unlawfully and unreasonably choke Amber.~~

~~94.     Defendants fostered, encouraged, and/or turned a blind eye, willfully and with deliberate indifferent towards correctional officer misconduct, including the use of excessive force and fostering an environment that facilitated the covering up of officer misconduct, in violation of Amber's right to be free from cruel and unusual punishment under the Maryland Declaration of Rights.~~

~~95.     The acts or omissions of Defendants intentionally deprived Amber of her rights under the Maryland Declaration of rights and were the direct and proximate cause of Amber's injuries and other damages.~~

~~96.     Amber had a clearly established right to be free from unjustified assault and battery.~~

~~97.     Defendants were acting pursuant to State of Maryland custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Amber.~~

21

98. ~~Pursuant to the Maryland Torts Claim Act — Maryland Code Annotated State Government Article Section 12-104, Defendant State is directly liable for the constitutional torts committed against Amber by its employees, including Officers Santana, Washington, Okeke, Green, and Abello, because it has legislatively waived its immunity to such claims for tortious acts committed within the scope of their employees' public duties.~~

99. ~~As a proximate result of Defendants' unlawful conduct, Amber has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages. As a further result of the Defendants' unlawful conduct, Amber has incurred special damages, including medically related expenses and may continue to incur further medical and other special damages related expenses.~~

~~WHEREFORE, Plaintiff respectfully demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees.~~

~~COUNT III~~

### Negligence

~~100.~~102.    Amber adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

~~101.~~103.    DPSCS is an executive department of the Maryland State Government, which is responsible for protecting the safety of the public as well as detainees and inmates under its supervision "so that all Marylanders can enjoy living and working in the state."

~~102.~~104.    The State and DPSCS, through their agents, servants and employees, including the above-named Officers, participated in, directed, supervised, and approved the promulgation of its duty to protect the safety of the public as well as detainees and inmates under their supervision.

22

103.105.    The State and DPSCS owed a duty to Amber to ensure that it undertook its responsibility for protecting her with due care and pursuant to proper standards and practices to reasonably prevent foreseeable injury to Amber.

104.106.    It was foreseeable to the State and DPSCS that by not fulfilling their duty owed to Amber, that she would likely suffer substantial injury and/or damages at the hands of an employee or agent of DPSCS.

105.107.    Despite this knowledge, the State and DPSCS breached their duty to Amber by;

a.    negligently failing to adequately train its correctional officer employees, including the Officer Defendants, on the use of reasonable force in maintaining custody and control over detainees and inmates;

b.    negligently failing to adequately supervise its correctional officer employees in their uses of force against detainees and inmates;

c.    negligently failing to establish policies reasonably designed to maintain an environment within DPSCS of accountability for its correctional officer employees' conduct, to adequately discourage DPSCS officers from engaging in tortious conduct, to adequately deter DPSCS officers from violating the legal rights of detainees and inmates, including Amber, and to adequately dissuade DPSCS officers from concealing officer misconduct against inmates and detainees, including Amber.

d.    Negligently failing to establish reasonable measures necessary to prevent retaliation against Amber by Officer Santana based on their known history.

106.108.    As a direct and proximate result of this breach of duty by Defendants, Amber sustained, and will continue to sustain, substantial temporary and permanent physical

23

injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, and inability to perform and enjoy her normal and usual activities, and economic damages, including but not limited to past and future medical bills and expenses, future lost earning capacity and unnecessary attorneys' fees, all to Amber's great detriment.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees.

## COUNT III̶V̶
### Respondeat Superior

1̶0̶7̶.109.      Amber adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

1̶0̶8̶.110.      The acts of assault, battery, and violations of Amber's rights under the Maryland Declaration of Rights were committed by Officer Defendants within their scope of employment with DPSCS and Central Booking, that their acts were committed while the officers were on duty and in furtherance of DPSCS's interest and policies.

1̶0̶9̶.111.      As Officer Santana, Washington, Okeke, Green, and Abello's employer, the State of Maryland is vicariously responsible for the acts of assault, battery, and violations of Amber's rights under the Maryland Declaration of Rights which were committed by the Officers and Defendants within the scope of their employment.

1̶1̶0̶.112.      As direct and proximate cause of the acts of assault, battery, and violations of Amber's rights under the Maryland Declaration of Rights, Amber was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, and

24

Exhibit B                                                                24

inability to perform and enjoy her normal and usual activities, and economic damages, including but not limited to past and future medical bills and expenses, future lost earning capacity and unnecessary attorneys' fees, all to Amber's great detriment.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant State of Maryland in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees.

## COUNT IV

### Failure to Accommodate
### Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101 et seq.
### Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a

113.   Amber adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

114.   Amber suffers from a disability within the meaning and scope of 42 U.S.C. § 12102. Accordingly, Amber is a member of the class of persons protected by the ADAAA and Section 504 of the Rehabilitation Act, which makes it unlawful for a public entity and entities receiving federal funds to discriminate against an individual with a disability, or to deny the benefits of the services, programs, or activities of a public entity or entity receiving federal funds to a person with a disability.

115.   Amber is a qualified individual with a disability under Title II of the ADA, as the definition provided in the ADAAA encompasses individuals who rely on mitigating measures to ameliorate the effects of an impairment.

116.   Amber's disability substantially limits major life activities in the absence of hormone therapy and accommodations which permit her to live and present as a woman.

25

117.     With treatment and reasonable accommodation, Amber can perform all major life activities.

118.     Defendants received adequate notice of Amber's disability and desire for reasonable accommodations.

119.     Defendants knew that the reasonable accommodation requested by Amber was available that would have enabled Amber to perform all major life activities.

120.     Defendants knowingly, intentionally, and/or with reckless indifference to Amber's federally protected rights, failed to provide her with the necessary medication, aids, or services she requested, subjected her and made her vulnerable to discrimination, and/or maintained policies and procedures that had a disparate impact on Amber because of her disability and resulting in Amber being denied the same benefits and services available to inmates who do not have gender dysphoria up until the present day.

121.     The accommodations requested by Amber included access to hormone therapy, access to feminine products such as undergarments, and repeated requests for Defendants to implement and enforce policies prohibiting DPSCS staff members from misgendering her, discriminating against her based on her transgender status, and/or harassing her due to her transgender status.

122.     These accommodations were required on account of the negative, exacerbating, and deleterious effects that not providing them would have on Amber's symptoms and conditions created by her gender dysphoria.

123.     Defendants denied Amber these accommodations, necessary to ensure her health, safety, and welfare while in the custody of the Department of Public Safety and Correctional Services.

Exhibit B                                                                            26

124.    Defendants did not make a good faith attempt to comply with the law by adopting any policies or procedures designed to prevent the unlawful discrimination suffered by Amber.

125.    Defendants' acts and omissions violated the ADA and Section 504, which prohibit discrimination on the basis of physical and mental disability and protect persons such as Amber from the type of injuries and damages set forth herein.

126.    As a direct and legal result of Defendants' actions and omissions, Amber has suffered and continues to suffer damages, including pain and suffering, emotional, psychological, and physical distress; and other pecuniary losses not yet ascertained.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus punitive damages, interest, costs and attorneys' fees.

## RELIEF REQUESTED

WHEREFORE, as to each and every count pled, Plaintiffs respectfully requests that this court award them:

A. Judgment in favor of Plaintiff and against Defendants, jointly and severally, finding Defendants liable to Plaintiffs;

B. Award Plaintiffs compensatory damages in an amount which exceeds $75,000.00, plus interest and costs in an amount to be determined at trial;

C. Award Plaintiff punitive damages in an amount to be determined at trial;

B.D.    Injunctive and declaratory relief, including but not limited to ordering Defendants to provide inmates with gender dysphoria with adequate and necessary medical care and services, and declaring that Defendants practices in denying Amber and other similarly situated inmates adequate and necessary medical treatment and services is violative of federal law.

27

C.E._____Reimburse Plaintiffs all costs paid by Plaintiffs or on behalf of Plaintiffs in

connection with the incident in an amount to be determined at trial;

D.F._____Award the costs and expenses of this case, including attorneys' fees;

E.G._____Award pre-judgement and post-judgement interest;

F.H._____Award all other further and general relief as the court deems just and

necessary.

Dated: ~~June 13, 2022~~August 4, 2023                    Respectfully submitted,


MURPHY, FALCON & MURPHY

By: _____
Malcolm P. Ruff, 1206200211
One South Street, 30th Floor
Baltimore, ~~Maryland  21202~~Maryland 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: malcolm.ruff@murphyfalcon.com

*Attorneys for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on the issues set forth in this First Amended
Complaint.


Malcolm P. Ruff, 1206200211
Murphy, Falcon & Murphy
One South Street, 30th Floor
Baltimore, Maryland 21202
410-539-6500
*Attorney for Plaintiff Amber M. Canter*

28

## ~~DEMAND FOR JURY TRIAL~~

~~Plaintiff hereby demands a trial by jury on the issues set forth in this Complaint.~~

~~Malcolm P. Ruff, 1206200211~~
~~Murphy, Falcon & Murphy~~
~~One South Street, 30th Floor~~
~~Baltimore, Maryland 21202~~
~~410-539-6500~~
~~Attorney for Plaintiff Amber M. Canter~~

29

Exhibit B                                    29